# UDALL | SHUMWAY
COUNSELORS AT LAW SINCE 1965

1138 NORTH ALMA SCHOOL ROAD, SUITE 101
MESA, ARIZONA 85201
Telephone: 480.461.5300 | Fax: 480.833.9392

Joel E. Sannes (SBN 015999)
jes@udallshumway.com
James B. Reed (014015)
jbr@udallshumway.com
Carson T. H. Emmons (SBN 024094)
cthe@udallshumway.com
docket@udallshumway.com

*Attorneys for Plaintiff*

# IN THE UNITED SATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| MESA GOLFLAND, LTD., an Arizona limited partnership,<br><br>Plaintiff,<br><br>v.<br><br>DOUGLAS A. DUCEY, Governor of Arizona, in his official capacity;<br><br>Defendant. | CASE NO.: 2:20-cv-01616-JJT<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF ITS APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION** |

Plaintiff, Mesa Golfland, Ltd. ("Sunsplash"), through undersigned counsel, files this reply brief in support of its Motion for a Temporary Restraining Order against Defendant Governor Douglas A. Ducey ("Defendant"):

**I.     Introduction**

The Governor's defense to Sunsplash's Equal Protection claim is that he is a paper tiger: he has the power to make orders, but not enforce them.

Defendant adopts the position that Executive Orders 2020-43 and 2020-52 ("EO 43 and EO 52") "*require all water parks temporarily pause operations*" Response at 1 (emphasis in original), but he then argues that it is up to someone else to enforce the orders. That argument was surprising and unexpected. This Court is not required to

accept this admission from Defendant, as it is contradicted by the evidence. If the Court disagrees and finds that EO 43 and EO 52 allow hotel, resort, municipal and state water parks to remain open, then EO 43 and EO 52 are facially invalid and may not be enforced against Sunsplash.

If the Court does accept Defendant's argument that the executive orders apply to hotel, resort, municipal and state[1] water parks, Defendant is nevertheless enforcing EO 43 and EO 52 in an irrationally discriminatory manner. Defendant's "not my job" argument that he is not obligated or even empowered to enforce his orders is legally indefensible. If that is true, Sunsplash is entitled relief that EO 43 and EO 52 as applied to Sunsplash are unenforceable.

Whether facially or as applied, Sunsplash has established an equal protection violation.[2] Having taken the position that EO 43 and EO 52 should apply equally to all water parks in the State, the Governor concedes that there is no rational basis for distinguishing between Sunsplash (ordered closed) and its competitors (still open). Sunsplash has surpassed the standard of "likelihood to succeed" on the merits to "certain to succeed" on its Equal Protection claim.

II. **Argument**

A. **Facial Equal Protection Violation**

1. **EO 43 and EO 52 Facially Discriminate**

---

[1] Defendant argues that "Slide Mountain State Park" "has a natural waterway, [is] not a water park," and that "Slide Mountain is in Yavapai County." Response at 10, n. 5. *Slide Rock State Park* is in Coconino County, not Yavapai. It is a natural waterway where hundreds of people slide on slippery rock down a fast-moving 80-foot section of Oak Creek where the water is about four feet wide, or they leap from boulders into the water.

[2] Sunsplash does not contest that the COVID-19 pandemic's effects in Arizona required quick and comprehensive action by the Governor. Sunsplash also does not contest that that there was a rational basis for closing *all* water parks. This case is about closing Sunsplash while allowing its competitors to remain open.

The Governor's argument, that EO 43 and EO 52 apply equally to stand-alone water parks, hotel and resort waterparks, and municipal and state water parks is not believable. Because they facially discriminate, EO 43 and EO 52 are invalid as to water parks in general. *See Eide v. Sarasota County*, *supra.* 908 F.2d 716, 722 (11th Cir. 1990) (citation omitted) ("An equal protection claim can attack the statute on its face or as applied to the property involved. The remedy for a facial challenge is to enjoin the local authority from enforcing the regulation.").

To believe the Governor, this Court would need to conclude that the general manager of the Arizona Grand Resort misinterpreted EO 43 and EO 52 and, by mistake, stayed open for the public to enjoy the Oasis Water Park's eight-story water slide and lazy river. That would also apply to the managers of the Westin Kierland Resort & Spa, which mistakenly stayed open for guests and day-pass users to use its Flow Rider surf simulator and its lazy river. The same "misinterpretation" was made by all twelve of the other still-open resort water parks. Even the Cities of Mesa and Chandler misinterpreted EO 43 and EO 52 – allowing the general public to use their bucket-dumps, water slides and lazy rivers. The Governor's argument also relies on misinterpretations of EO 43 and EO 52 by all State agencies with the power to enforce his Executive Orders, including the Arizona Department of Health Services ("ADHS") and Department of Liquor Licensing and Control ("DLLC"). The Mayors and police departments in the cities of Phoenix, Scottsdale, Mesa, Chandler, and Tucson all made the same misinterpretation.

It was no secret that hotel and resort water parks were open. They were all *advertising* that they were open. Their websites said they were open. And on August 18, the Arizona Republic ran the story *A Few Arizona Hotels are Offering Day Passes this Summer; Here's How to Get One*, that identified no less than *ten* resorts that were offering day passes to use their fully operating water parks. [Hearing Exhibit 8, S.

Carlston Declaration at ¶¶ 31].[3] Either the Governor's interpretation of his own orders is wrong, or resort operators, state agencies and cities all cooperated in openly defying or refusing to enforce his orders. Even without taking evidence, the Court need not accept this argument.

Moreover, the Governor's general counsel was aware from a phone call with Sunsplash that, *as of June 30*, Sunsplash was complaining that Sunsplash was singled-out. [*Id.* ¶ 13]. What happened after the June 30 call is unknown, except that it is undisputed that hotel, resort, municipal and state water parks remained open with no enforcement actions against them even after the Governor was made aware they were open.

The Governor's argument is also contradicted by public statements. In an August 13 radio interview, ADHS Director Dr. Cara Christ was asked about Sunsplash's lawsuit. Asked, "why would people be safer at a hotel pool than places like Mesa Sunsplash?", Dr. Christ responded:

> There's a major difference between the water parks and the pools at the hotels. So, the pools at the hotels are being restricted, or should be, to only those guests. So, you're going to be able to track who was there, who was at the hotel at that time and not allow outside guests in. When you're looking at something like Big Surf or Golfland and it's the general public coming in, you're mixing a lot of people. You have the opportunity for higher capacities to show up. And so, we really wanted to make sure that we are, you know, unfortunately in the business of breaking up large groups of adults.

[Hearing Exhibit 7 at p. 7-8].

Also, this lawsuit was filed on August 10. As of the past weekend, almost every hotel and resort water park was offering day passes. [S. Carlston Dec. at ¶¶ 32-38].

---

[3] The Governor makes the facially ridiculous argument that it was up to Sunsplash to close its competitors down by demanding enforcement against its competitors. It is odd to see an argument that it is up to citizens to force their government to enforce the law. It is also wrong. "[M]andamus will not ordinarily be granted to compel police officers to enforce the police or criminal laws generally." *Sensing v. Harris*, 217 Ariz. 261, 264, ¶ 7, 172 P.3d 856, 859 (App. 2007). If it had tried to force law enforcement to close down its competitors, its suit would have been dismissed as forcing the courts to resolve a "political question." *Id.* ¶ 13.

Video and photos from Arizona Grand's Oasis water park show it was fully operational this weekend. [Hearing Exhibits 11-14]. Videos and photos from the Scottsdale Fairmont Princess' water park show the same. [Hearing Exhibits 15-16]. Slide Rock – a natural water park – was packed over the past weekend. [Hearing Exhibit 17].

The Governor himself also gave a public statement that contradicts his position. A reporter at an August 21 press conference asked the Governor, "How do you justify the difference between how you're treating resorts in places like Mesa's Golfland splash park?" Defendant responded, "*That was seen as a loophole.*" [Hearing Exhibit 10, (emphasis added)]. Then, Governor Ducey "turn[ed] it over to Dr. Christ" who, with him standing next to her, explained:

> So when we found out that there were hotels that were operating water parks that were allowing the general public to attend, we have reached out and started doing an investigation to see how they are managing crowds, if they are bringing in outside of, like, their reserved guests in there. And we will be working with them to bring them into compliance. . . So what they would have to do is they would have to limit it to the guests. They would have to work on a reservation system, something like that . . ."

[*Id.*].

Even as of this Monday, ADHS was still allowing hotel and resort water parks to remain open. On August 24 (Monday) Dr. Christ was quoted as saying, "several resorts are advertising to get day visitors to their pools, water slides, hot tubs and 'lazy river' floats to generate additional revenue." They could continue to do so, she said: "[I]f they're limiting the activities, and it's limited to hotel guests, and they're not drawing large crowds like people waiting, that will be taken under consideration." [Hearing Exhibit 18, 18 20 08 24 Article AZ to Check Resorts Water Parks].

The Court is not obligated to accept Defendant's admission that he intended that EO 43 and EO 52 apply equally to all water parks. EO 43 provided "Pools operated as part of a public accommodation, such as those at hotels . . . shall prohibit groups larger than 10 from congregating together in or near the pool" but otherwise could continue to operate.

Legally, the weeks of allowing Sunsplash's competitors to remain open is the best evidence of how the Governor interpreted his own orders. *See, e.g.., Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158, 132 S. Ct. 2156, 2168, 183 L. Ed. 2d 153 (2012) (citation omitted) (["W]hile it may be 'possible for an entire industry to be in violation of the [FLSA] for a long time without the Labor Department noticing,' the 'more plausible hypothesis' is that the Department did not think the industry's practice was unlawful.").

Also, when there is "an appearance that the agency's interpretation is no more than a "'post hoc rationalization advanced by an agency seeking to defend past agency action against attack,'" id. (quoting Auer, 519 U.S. at 462, 117 S.Ct. 905) . . . deference is inappropriate." *Price v. Stevedoring Services of Am., Inc.*, 697 F.3d 820, 830 (9th Cir. 2012).

Nothing supports the Governor's interpretation of EO 43 and EO except for the Governor's say-so. All other evidence indicates EO 43 and EO 52 were adopted and enforced to allow Sunsplash's competitors, all similarly situated to Sunsplash, to operate their water parks while Sunsplash was ordered to stop operations.

Given that the executive orders contained within them a violation of Sunsplash's and other stand-alone water parks' equal protection rights, they are facially unenforceable as to water parks, and this Court should so declare. *Eide v. Sarasota, supra*.

**B. As-Applied Equal Protection Violation**

**1. Defendant has authority to enforce his own orders**

Defendant's "not my job" argument is both legally wrong and has been contradicted in other courts by the Defendant himself. Defendant argues:

> The Application must fail because Golfland's entire case proceeds from a misreading of EOs 2020-43 and 2020-52. . . EO 2020-43 and 52 require that all water parks temporarily pause operations. To the extent that some

businesses have allegedly not been complying with those orders, Golfland is free to raise complaints with local law enforcement or ADHS. [4]

Put simply, Golfland cannot sue Governor Ducey for alleged inconsistent or unequal enforcement of EOs that clearly delegate enforcement to local authorities and regulatory agencies. Golfland's alleged harm (that other water parks are still operating) would be more appropriately directed to bringing a mandamus action against local authorities or the illegally operating facilities.

[Response at p. 1 and 11].

The Governor's excuse in this case, that his power was limited, and that it was up to others to enforce EO 43 and 52 is textually, plainly incorrect.

EO 43 and EO 52 both recite that they were adopted by the Governor "by virtue of the authority vested in me by the Constitution and laws of this State including A.R.S. §§ 26-303 and 36-787." A.R.S. § 26-303(E)(1) provides:

> E. During a state of emergency:
>
> 1. The governor shall have complete authority over all agencies of the state government and the right to exercise, within the area designated, all police power vested in the state by the constitution and laws of this state . . .

*Id*. A.R.S. § 36-787 provides that "Law enforcement officials of this state and the national guard *shall enforce* orders issued by the governor under this section." A.R.S. § 36-787(D).

The "state" includes all political subdivisions of the State, including cities, counties, and quasi-governmental districts. *City of Bisbee v. Cochise County*, 52 Ariz. 1, 13, 78 P.2d 982, 986 (1938). This is also true by statute, as the Emergency Preparedness Act mandates that "The law enforcing authorities of the state and political subdivisions shall enforce orders, rules and regulations issued pursuant to this chapter."

---

[4] It is odd that the Governor is described as an "agency," but here he is. In this unusual historical circumstance, the Governor is both legislator (adopting executive orders that have the effect of law) and executive (enforcing his own executive orders). That was the intent of the Arizona legislature when it adopted the 1971 "Act Relating to Disaster Preparedness," which Act included A.R.S. § 26-303 and A.R.S. § 36-787 providing Defendant with his emergency powers.

7

A.R.S. § 26-316. Finally, per A.R.S. § 36-787(D), local law enforcement authorities and the National Guard "shall" enforce the Governor's orders.

The Governor could undoubtedly have ordered a State agency like the ADHS or DLLC to take action. "The governor shall have complete authority over all agencies of the state government." A.R.S. § 26-303 (E)(1). When Mountainside Fitness remained open, ADHS filed a lawsuit with a request for an emergency injunction to close Mountainside. [Hearing Exhibit 19]. When Lifetime Fitness remained open, the Department of Liquor License and Control revoked Lifetime's liquor licenses. [Hearing Exhibit 2]. All of the hotels and resorts that have been allowed to operate their water parks have liquor licenses too.[5] The Governor could have ordered ADHS and DLLC to do the same things with Sunsplash's competitors to enforce his orders

In other litigation, Defendant has argued that, in adopting A.R.S. § 26-303, the Arizona Legislature intended to give him unlimited authority. In response to a federal court fitness center lawsuit, the Governor claimed "inherent and plenary police power." [Hearing Exhibit 22 at 1]. And in response to a lawsuit by property lessors against the moratorium on residential evictions, the Governor argued he had "all police powers vested in the state," and that "the Legislature made the underlying vital policy choice to give this police power to the Governor in a time of emergency." [Hearing Exhibit 21 at 5]. In response to a Special Action Petition filed in the Arizona Supreme Court on behalf of closed bar owners, Defendant argued that A.R.S. § 26-303(E) granted the Governor all, or more, of the police powers than cities have. [Exhibit 20 at 28].

---

[5] Defendant says he cannot regulate Great Wolf Lodge because it is located on the Salt River Pima Maricopa Indian Community. First, Defendant could order the Department of Liquor License and Control to revoke is liquor license, as happened to Lifetime Fitness. Like the other resort hotels, Great Wolf Lodge has an Arizona liquor license (license number 06073611). Second, Arizona can regulate non-native businesses that operate on sovereign nation land. *See White Mountain Apache Tribe v. State of Ariz., Dept. of Game & Fish*, 649 F.2d 1274, 1284 (9th Cir. 1981) (states can require non-native American residents hunting and fishing on sovereign native land to have valid hunting and fishing licenses).

**2. Selective Enforcement is an "As Applied" Equal Protection Violation.**

Enforcing assertedly neutral rules in an unequal fashion has been unconstitutional since the Supreme Court's 1886 precedent, *Yick Wo v. Hopkins*, 118 U.S. 356 (1886). *Yick Wo v. Hopkins* was a due process case decided before the Supreme Court identified "suspect classes" for Equal Protection jurisprudence. It is among the Court's most historical cases. The case involved a San Francisco ordinance that regulated buildings out of which laundry businesses operated. Like EO 43 and EO 52, the ordinance was "fair on its face, and impartial in appearance." *Id.* at 373. However, it was unequally applied in that the plaintiff and 200 other persons of Chinese heritage were denied permission to operate, whereas 81 persons who were not of Chinese heritage were granted permission to operate. *Id.* at 374. The Court applied the rational basis test, which was whether the distinction in enforcement was "so clearly unreasonable, so arbitrary, oppressive, or partial, as to . . . justify the courts in interfering and setting it aside as a plain abuse of authority." *Id.* at 372. The Court invalidated the ordinance as applied to the Petitioners. The Court held that selective enforcement is as much a violation of Equal Protection as a law that on its face was irrationally discriminatory:

> Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution.

*Id.* at 373–74.

In *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) the issue was whether "the Village intentionally demanded a 33–foot easement as a condition of connecting her property to the municipal water supply where the Village required only a 15–foot easement from other similarly situated property owners." *Id.* at 565. The Court repeated: "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated

differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id*. at 564.[6]

Selective enforcement violation is an "as applied" Equal Protection violation. *See Eide v. Sarasota County, supra*, ("[T]he remedy for an as applied challenge is an injunction against the unconstitutional application of the regulation to the plaintiff's property."). As an as-applied violaton, the orders cannot be enforced against Sunsplash.

### III. Defendant's Other Arguments

#### A. Eleventh Amendment

The Eleventh Amendment generally prohibits a state from being sued in federal court unless it consented to such suit. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 72, 116 S. Ct. 1114, 1131, 134 L. Ed. 2d 252 (1996). Defendant argues that "[t]he Eleventh Amendment bars [Sunsplash's] claims." Response at 9. This is untrue for two reasons. First, the State can waive "its Eleventh Amendment immunity by conduct that is incompatible with an intent to preserve that immunity." *In re Bliemeister*, 296 F.3d 858, 861 (9th Cir. 2002). One act that indisputably constitutes waiver of Eleventh Amendment immunity is the voluntary removal to federal court of a case filed in state court. *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 620, 122 S. Ct. 1640, 1644, 152 L. Ed. 2d 806 (2002) (*holding* that "general legal principal of waiver" applies where State removed case to federal court, thereby "voluntarily invok[ing] the federal court's jurisdiction"). That is precisely what happened here. Defendant cannot "voluntarily invoke" the Court's jurisdiction while simultaneously arguing it is immune from the Court's jurisdiction. Thus, Defendant has waived its Eleventh Amendment immunity.

Second, even if Defendant had not waived its immunity, the *Ex parte Young* doctrine applies because Defendant's "power by virtue of his office sufficiently

---

[6] Arizona's constitution also prohibits irrationally selective enforcement of the law. *Jones v. Sterling*, 210 Ariz. 308, 313, ¶ 21, 110 P.3d 1271, 1276 (2005).

connected him with the duty of enforcement to make him a proper party" to this suit. *Ex parte Young*, 209 U.S. 123, 161 (1908).[7] Defendant argues to the contrary, apparently believing the arbitrary enforcement of his own executive orders is the same as "[a]llegations of general oversight of State laws," Response at 10 (*quoting Young v Hawaii*, 548 F. Supp. 2d 1151, 1164 (D. Haw. 2008), or an "impermissible" attempt to "make the State a party." *Confederated Tribes & Bands of Yakama Indian Nation v. Locke*, 176 F.3d 467, 469 (9th Cir. 1999).

But these cases are inapposite. The question of "[w]hether Governor [Ducey] has the required connection to enforcement of [his] executive orders depends upon the particulars of [Arizona] law and on [Ninth] Circuit authority applying *Ex parte Young*." *First Baptist Church v. Kelly*, 20-1102-JWB, 2020 WL 1984259, at *4 (D. Kan. Apr. 27, 2020). In the Ninth Circuit, the *Ex Parte Young* "connection" exists when the sued official "has direct authority over and principal responsibility for enforcing" the law or, in this case, executive order at issue. *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir.), *opinion amended on denial of reh'g,* 312 F.3d 416 (9th Cir. 2002).

Here, Defendant's authority to enforce emergency executive orders depends not on "general oversight of State laws," but on express statutory language that gives Defendant "complete authority over all agencies of the state government and the right to exercise…all police power vested in the state by the constitution and laws of" Arizona during a declared state of emergency. A.R.S. § 26-303(E)(1). Given this "complete authority," Defendant's connection to EO 43 and EO 52 is more than sufficient to warrant jurisdiction under *Ex Parte Young*. *See also First Baptist Church*, at *7 (*holding governor has "sufficient connection" for purposes of *Ex parte Young* where she had

---

[7] In the separate motion to dismiss, Defendant argues that Sunsplash cannot bring a Section 1983 damages claim against Defendant in his official capacity. That is a defect in the pleadings that will be cured by amending the complaint to name Defendant in his individual capacity as well.

power to issue and enforce executive orders under Kansas Emergency Management Act.).

**B. Sunsplash has standing**

Defendant argues Sunsplash lacks standing for the same reason he says he has sovereign immunity: "the Governor [cannot be held] accountable for actions of local authorities and regulatory agencies." Response at 11. And, for the same reason sovereign immunity does not apply, Sunsplash has standing.

**C. Administrative remedies do not address arbitrarily disparate treatment**

Defendant argues Sunsplash "must exhaust its administrative remedies prior to seeking judicial review." Response at 12 (*quoting Doria Mining Eng'g Corp. v. Morton*, 608 F.2d 1255, 1257 (9th Cir. 1979)). This argument presumes administrative review will provide adequate relief. The problem is it will not.

Defendant cites to the August 11 ADHS Emergency Management Order 2020-02 that would allow Sunsplash to submit a waiver application to ADHS establishing it is safer than what ADHS would require if Arizona were in the "Moderate" category of COVID-19 spread. If Sunsplash's waiver request is denied, it can apply for an informal settlement conference with the ADHS. If the informal settlement conference does not result in an agreement to allow Sunsplash to reopen, then Sunsplash can appeal to the Arizona Office of Administrative Hearings, and if the appeal is not successful, it can appeal the OAH decision to the Arizona Superior Court.

Here, Sunsplash must go through an administrative process where ADHS can exercise discretion whether to allow Sunsplash to remain open; and where if the wavier application is denied it must then go through a complete administrative review process to challenge the denial of the waiver application. In contrast, Sunsplash's competitors do not have to do any of these things. They have been allowed to remain open and can remain open without applying for a waiver.

If, when Arizona reaches the "moderate metric," Sunsplash can reopen if it submits an Attestation that it agrees to comply with ADHS restrictions on its operations. In contrast, Sunsplash's competitors will not need to submit an Attestation.[8] Instead, they will continue doing business as they have been doing, their only restriction being the restriction in EO 43 that they prohibit groups of more than 10 people from congregating. The administrative process *might* allow Sunsplash to reopen, whereas Sunsplash's competitors can remain open without the need to avail themselves of the administrative process. That is in itself an equal protection violation that cannot be remedied by Sunsplash engaging the administrative process.

**D. Irreparable Harm.**

The deprivation of constitutional rights "unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Defendant agrees. Defendant argues there is a "general rule that an alleged constitution infringement meets the irreparable harm requirement [only when] the plaintiff shows a likelihood of success on the merits." This is both obvious and irrelevant. Sunsplash has alleged its constitutional rights were violated. If it is likely to succeed on the merits that its Equal Protection rights have been violated, then the violation itself establishes irreparable harm.

Sunsplash can also establish the more traditional element of irreparable harm. Defendant argues that Sunsplash has "simply *implied* that it is losing money and *theorizes* that it is losing customers." Response at 14 (emphasis in original). Logically, how can a business that has been ordered closed for two months *not have lost* money? Sunsplash's evidence is that it has lost almost three million dollars of gross revenue

---

[8] For the same reason, Sunsplash's case will not be moot if Maricopa County moves into the "Moderate" transmission category and it will be allowed to reopen by attesting to complying with EO 43 and Emergency Measure 2020-02. First, transmission metrics may increase, which would force Sunsplash to close again. Second, none of Sunsplash's competitors have been required to comply with EO 43 and Emergency Measure 2020-02 and the restrictions they impose on "water parks."

from the closures. [Hearing Exhibit ---, Declaration of S. Carlston at ¶ ---]. There has also been significant, long-term damage to Sunsplash's potential to retain existing customers and to attract new customers, after it is allowed to reopen. [*Id.* at ¶ ---]. This element of damage, difficult to prove, is regarded legally as "irreparable." *IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 228 Ariz. 61, 65, ¶ 12, 263 P.3d 69, 73 (App. 2011).

### E. Balance of hardships

Defendant's argument that "[t]he public interests in keeping [EO 43 and EO 52] in place are far more significant than anything that [Sunsplash] has alleged or could show," is a red herring. This case is not about "keeping [EO 43 and EO 52] in place." Sunsplash has never asked the Court to strike down Defendant's executive orders or limit their applicability. The *only* issue in dispute here is whether EO 43 and EO 52 facially discriminate against stand-alone water parks or discriminate against Sunsplash as-applied. Defendant cannot reasonably argue that enjoining enforcement of EO 43 and EO 52 as to Sunsplash will meaningfully change Arizona's COVID-19 infection rates. On the other side of the account, Sunsplash is undeniably being harmed every day EO 43 and EO 52 are being unconstitutionally enforced against it.

### IV. Conclusion

Defendant warns that Sunsplash is trying to "unravel[] [Defendant's] emergency measures to stem a public health crisis." That is untrue. Sunsplash argues for treatment equal to its competitors. If EO 43 and EO 52 facially discriminate against stand-alone water parks, or if the Governor is selectively enforcing EO 43 and EO 52 against Sunsplash, Sunsplash's remedy is not to invalidate all of the Governor's executive orders, only that the orders be held unenforceable as to Sunsplash.

/ / /

**RESPECTFULLY SUBMITTED** this 26th day of August, 2020.

                    UDALL SHUMWAY PLC

                    /s/ Joel E. Sannes
                    Joel E. Sannes
                    James B. Reed
                    Carson T.H. Emmons
                    1138 North Alma School Rd., Suite 101
                    Mesa, AZ 85201
                    *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on August 26, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, which electronically sends a copy of same on to:

Brett W. Johnson
Colin P. Ahler
Tracy A. Olson
Snell & Wilmer LLP
One Arizona Center
400 E. Van Buren St., Ste. 1900
Phoenix, AZ 85004-2202
bwjohnson@swlaw.com
cahler@swlaw.com
tolson@swlaw.com


Anni L. Foster
General Counsel
Office of Arizona Governor Douglas A. Ducey
1700 W. Washington Street
Phoenix, AZ 85007
afoster@az.gov
*Attorneys for Defendant*


By: /s/ Taylor Jensen