**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mesa Golfland, Limited, | No. CV-20-01616-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Douglas A. Ducey, | |
| Defendant. | |

At issue is Plaintiff Mesa Golfland, Ltd.'s Verified Application for Temporary Restraining Order ("TRO") with Notice and Motion for Preliminary and Permanent Injunction (Doc. 3, TRO Applic.), to which Defendant Governor Ducey filed a Response (Doc. 14, Resp.) and Plaintiff filed a Reply (Doc. 19, Reply). The Court held a hearing on Plaintiff's TRO Application on August 28, 2020. (Doc. 26; Doc. 34 ("Tr.").) Concurrently with his Response to Plaintiff's TRO Application, Governor Ducey filed a Motion to Dismiss, which the Court will resolve once briefing on that Motion is complete. The Court will grant Governor Ducey's Motion for Judicial Notice (Doc. 13) and Motion to Supplement Motion for Judicial Notice (Doc. 25), both of which Plaintiff did not oppose, and will take judicial notice of the facts identified in those two Motions.

**I.    BACKGROUND**

In response to the ongoing COVID-19 pandemic, Defendant Douglas A. Ducey, Governor of Arizona, exercised the state-of-emergency powers delegated to him in A.R.S. § 26-303(E) and entered a series of Executive Orders (EOs) regarding among other things

the conduct of business in the state to attempt to mitigate the emergency caused by the pandemic. Initially, in March 2020, Governor Ducey entered EOs aimed at encouraging physical distancing to prevent the transmission of COVID-19 by restricting certain business activities and keeping individuals at home except when engaging in essential activities. On May 12, Governor Ducey entered EO 2020-36, which rescinded many of the prior restrictions on business operations. Soon after, the number of COVID-19 cases in the state skyrocketed, increasing from 193 new cases on June 1 to 4,877 new cases on July 1. (Doc. 14-1, Decl. of Cara Christ ("Christ Decl.") ¶ 25.)

On June 29, 2020, Governor Ducey issued EO 2020-43, "Pausing of Arizona's Reopening—Slowing the Spread of COVID-19." EO 2020-43 contains provisions prohibiting unapproved organized events with over 50 individuals and "pausing" the operations of businesses deemed high-risk for the transmission of COVID-19, including bars, indoor gyms and fitness clubs, indoor movie theaters, and water parks and tubing operations. EO 2020-43 states that swimming pools operating as part of a public accommodation such as a hotel can continue to operate so long as groups of more than 10 individuals are prohibited from congregating in or near the pool. EO 2020-43 "allows law enforcement and any regulatory agency, pursuant to their regulatory authority, to take immediate enforcement action against any business that fails to follow" the requirements of the EO. Plaintiff Mesa Golfland, Ltd. operates the Sunsplash Water Park in Mesa, Arizona, and was required to pause its operations under EO 2020-43. On July 23, 2020, Governor Ducey issued EO 2020-52, which extends EO 2020-43 with review for repeal or revision every two weeks.

Dr. Cara Christ is the Director of the Arizona Department of Health Services ("ADHS"). She avers that the decision

> to recommend temporary closure of water parks can be supported by the following factors: [1] Water parks primarily involve large groups of younger patrons engaging in physical activity in close proximity. Physical activity results in more exerted breathing, which increases the output of viral respiratory droplets. [2] Engaging in activities that usually occur in a water park setting—swimming, arcade gaming, etc.—may make wearing masks

difficult. [3] The wearing of a mask in the water is unlikely. [4] Even if masks are worn, they would quickly become wet, reducing their prevention benefits and making it difficult to breathe. [5] Due to the size of the crowds—a mass of people—six feet of physical distance is not likely to be maintained. [6] There is a tendency to regularly go to different areas of the facility, use multiple areas of physical contact (attractions, railing, concession areas, arcade, mini-golf areas, etc.), enter and exit locker rooms/restrooms, and travel to and from water fountains throughout a visit. [7] Water parks cannot easily be compared to retail, food, or general park environments because of the fundamentally different activities that take place there.

(Christ Decl. ¶ 32.)

On August 10, 2020, Plaintiff filed a Complaint against Governor Ducey in Arizona state court alleging that, while Plaintiff was required to close Sunsplash under EO 2020-43, certain hotels, resorts, and municipalities continue to operate not just pools but water parks. (Doc. 1-2, Compl.) Plaintiff contends that drawing a distinction between stand-alone water parks like Sunsplash and water parks at hotels, resorts, and municipal parks is unconstitutionally arbitrary. Plaintiff raises four claims against Governor Ducey: (1) a procedural due process violation under Art. 2, § 4 of the Arizona Constitution; (2) a substantive due process violation under Art. 2, § 4 of the Arizona Constitution; (3) an equal protection violation under Art. 2, § 13 of the Arizona Constitution; and (4) equal protection and substantive due process violations under the 14th Amendment to the United States Constitution. Plaintiff seeks preliminary and permanent injunctive relief, damages, and attorneys' fees. Governor Ducey timely removed the action to this Court on August 17, 2020.

On the same day as Plaintiff filed its Complaint—August 10, 2020—ADHS issued Emergency Measure ("EM") 2020-02, which sets forth the benchmarks and requirements that businesses that were required to close must meet to safely re-open. On August 19, Plaintiff filed an Application for Reopening with ADHS under EM 2020-02. Moreover, when a county in Arizona hits certain metrics in lowering the numbers of new COVID-19 cases—from, for example, "substantial risk" to "moderate risk" of transmission—ADHS has in place an attestation process by which businesses in that county can begin to reopen

by completing and posting an Attestation. Maricopa County, in which Plaintiff is located, moved from the substantial risk to moderate risk level on August 27, allowing certain businesses to reopen under the attestation process, at least in part. On the evening of August 28, after the TRO hearing, Plaintiff completed the ADHS Attestation so that it could reopen. (Doc. 33, Status Update Regarding ADHS Attestation at 1.) Plaintiff stated both in its Reply and at the TRO hearing that it maintains and reserves its objection to being required to complete the Attestation and follow the associated ADHS requirements, for the same reasons it has filed this lawsuit and seeks injunctive relief. (Doc. 33 at 2.)

## II.   LEGAL STANDARD

To obtain a temporary restraining order or preliminary injunction, a plaintiff must show that "(1) [it] is likely to succeed on the merits, (2) [it] is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in [its] favor, and (4) an injunction is in the public interest." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The Ninth Circuit Court of Appeals, employing a sliding scale analysis, has also stated that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1078 (9th Cir. 2013) *cert. denied*, 134 S. Ct. 2877 (2014) (quoting *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1132 (9th Cir. 2011)).

## III.   ANALYSIS

The Court's analysis begins and ends with the first element of the *Winter* test, namely, Plaintiffs' likelihood of success on the merits of their claims. Plaintiff seeks injunctive relief under its equal protection and substantive due process claims, which Plaintiff concedes are subject to the same analytical framework. (TRO Applic. at 8 n.3.) That is, under both the Arizona and United States Constitutions, Governor Ducey's alleged distinction in EO 2020-43 between stand-alone water parks and water parks at hotels, resorts, and municipal parks need have only a rational basis. (TRO Applic. at 8 (citing

*Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1085 (9th Cir. 2015); *Coleman v. City of Mesa*, 284 P.3d 863, 873 (Ariz. 2012)).) But "[t]he State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985).

### A. Facial Challenge to EO 2020-43

The parties do not dispute that Governor Ducey had the authority under A.R.S. § 26-303(E) to enter Executive Orders in the face of the state of emergency caused by the COVID-19 pandemic. However, the parties do dispute what is essentially the basis of Plaintiff's facial challenge to EO 2020-43, that is, that Governor Ducey drew a distinction between stand-alone water parks and those at hotels, resorts, and municipal parks. Governor Ducey points to the plain language of EO 2020-43, which distinguishes between water parks and pools, and argues that his Order requiring business closure applied to all water parks, whether they are stand-alone or located at a hotel, resort, or municipal park. In other words, pools at hotels, resorts, and municipal parks could remain open under certain conditions; water parks could not.

Plaintiff asks the Court not to accept Governor Ducey's present statements of the intent of EO 2020-43 as applied to water parks, which Plaintiff characterizes as *post hoc* rationalization. To support its argument, Plaintiff points to public statements Governor Ducey and Dr. Christ made. But the Court agrees with Governor Ducey that the statements Plaintiff cites do not contradict Governor Ducey's present position as to the intent of EO 2020-43. For example, Plaintiff makes much of Governor Ducey's statement at a press conference, in response to a reporter's question about the difference between water parks at resorts and stand-alone water parks like Sunsplash, that it was "seen as a loophole." (Tr. at 64.) Plaintiff interprets that statement as an admission that Governor Ducey intended to create a loophole for resorts. But in the context of the press conference, it appears that Governor Ducey was saying that resorts saw it as a loophole, not him. Indeed, immediately after his statement, Dr. Christ indicated her agency was investigating the identified hotels

and resorts and said, "when we found out that there were hotels that were operating water parks that were allowing the general public to attend, we have reached and started doing an investigation to see how they are managing crowds, if they are bringing in outside of, like, their reserved guests in there. And we will be working with them to bring them into compliance." (Tr. at 64.) Even if Dr. Christ's statement was focused on crowd control instead of the water park/pool distinction, the Court disagrees with Plaintiff that this evidence leads to the conclusion that Governor Ducey intended to distinguish between stand-alone water parks and water parks at resorts in issuing EO 2020-43.

Likewise, Plaintiff's evidence that Governor Ducey's counsel stated she would look into the fact that hotels are operating water parks is actually consistent with Governor Ducey's proffered original intent of EO 2020-43. (Tr. at 9-10.) Plaintiff also points to Dr. Christ's statements in an interview with the news affiliate KTAR that hotels should be limiting attendance at water parks to their guests. (Tr. at 17.) While the terms "water park" and "pool" may have been conflated at times in statements to the press—indeed, "water park" is never defined in the EOs—there is nothing in the language of EO 2020-43 itself to support Plaintiff's position that Governor Ducey intended to distinguish between stand-alone water parks and those at hotels, resorts, and municipal parks. The administration's subsequent statements do not convince the Court otherwise.

With that finding in mind, Plaintiff cannot meet its burden to show a likelihood of success on the merits, or even serious questions going to the merits, of its facial challenge to EO 2020-43. Dr. Christ's Declaration provides ample evidence of a rational basis to distinguish between activity at water parks, which draw masses of people in queues and close proximity who move frequently between various attractions, as opposed to pools at hotels, resorts, and municipal parks, all of which were charged with keeping groups of people in or near the pool to 10 or less. (*See* Christ Decl. ¶ 32.) Because Plaintiff has not demonstrated either a likelihood of success or serious questions going to the merits of its facial challenge to EO 2020-43, Plaintiff is not entitled to preliminary injunctive relief. *See DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011) (stating when "a plaintiff

has failed to show the likelihood of success on the merits, we need not consider the remaining three" *Winter* elements for obtaining preliminary injunctive relief); *Garcia*, 786 F.3d at 740.

**B.     As-Applied Challenge to EO 2020-43**

Plaintiff also contends that Governor Ducey had the direct authority to enforce EO 2020-43 and the closure of stand-alone water parks and continued operation of water parks at hotels, resorts, and municipal parks was arbitrary and irrational. For his part, Governor Ducey argues that EO 2020-43 explicitly gave regulatory and enforcement authority to the applicable agency—here, principally ADHS. Indeed, Governor Ducey relatedly argues that (1) Plaintiff's claim is barred by the Eleventh Amendment because Plaintiff sued him in his official capacity and he lacks the direct duty of enforcement required under *Ex Parte Young*, 209 U.S. 123, 161 (1908); (2) Plaintiff lacks standing because its alleged injury is not fairly traceable to Governor Ducey's conduct, since he did not have the regulatory and enforcement duties under EO 2020-43; and (3) Plaintiff failed to join ADHS and/or local law enforcement as an indispensable party as required under Federal Rule of Civil Procedure 19(a)(1)(A). (Resp. at 9-11.) In essence, Governor Ducey argues that he "is dealing with [the COVID-19 pandemic] at the 30,000-foot level. That's how the government works. Then the Governor provides, in this case, the quasi-legislation for agencies to act. [EO 2020-43] specifically talks about the regulatory—that the agencies are going to operate under their existing regulatory authority." (Tr. at 44.)

The Court agrees with Governor Ducey that EO 2020-43 was quasi-legislative under A.R.S. § 26-303(E) and explicitly provides, in paragraph 7, that it will be enforced pursuant to the regulatory authority of individual agencies and law enforcement, and not directly by Governor Ducey. As a result, Plaintiff cannot bring an as-applied claim against Governor Ducey. (Tr. at 63); *see, e.g.*, *Confed. Tribes & Bands of the Yakama Indian Nation v. Locke*, 176 F.3d 467, 469-70 (9th Cir. 1999) (concluding the plaintiff could not bring claim against the governor to challenge actions of the state lottery where the governor was not directly charged with operating the lottery).

IT IS THEREFORE ORDERED denying Plaintiff's Verified Application for Temporary Restraining Order with Notice and Motion for Preliminary and Permanent Injunction (Doc. 3).

IT IS FURTHER ORDERED granting Defendant's Motion for Judicial Notice (Doc. 13) and Motion to Supplement Motion for Judicial Notice (Doc. 25).

Dated this 21st day of September, 2020.

Honorable John J. Tuchi
United States District Judge