**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mesa Golfland, Limited,<br><br>         Plaintiff,<br><br>v.<br><br>Douglas A. Ducey, *et al.*,<br><br>         Defendants. | No. CV-20-01616-PHX-JJT<br><br>**ORDER** |

At issue are Defendant Governor Douglas A. Ducey's Motion to Dismiss (Doc. 53), to which Plaintiff Mesa Golfland, Ltd. filed a Response (Doc. 61) and Governor Ducey filed a Reply (Doc. 66); Defendants Dr. Cara Christ and John Cocca's Motion to Dismiss (Doc. 55), to which Plaintiff filed a Response (Doc. 60) and Dr. Christ and Mr. Cocca filed a Reply (Doc. 64); and Defendant Eric Matson's Motion to Dismiss (Doc. 56), to which Plaintiff filed a Response (Doc. 59) and Mr. Matson filed a Reply (Doc. 65).[1] Governor Ducey also filed a Notice of Arizona Supreme Court Proceedings and Recent Executive Orders (Doc. 67), which Dr. Christ and Mr. Cocca joined (Doc. 68). The Court finds these matters appropriate for resolution without oral argument. LRCiv 7.2(f).

**I.    BACKGROUND**

From the allegations in the First Amended Complaint (Doc. 37, "FAC")—the operative pleading—as well as judicially-noticed evidence the parties submitted in

---

[1] Plaintiff also named the spouses of Dr. Christ, Mr. Cocca, and Mr. Matson as Defendants to reach the marital communities.

conjunction with the motion for preliminary injunctive relief (Docs. 3, 13, 14, 19, 34), the Court provides the following background. In response to the COVID-19 pandemic, Defendant Douglas A. Ducey, Governor of Arizona, exercised the state-of-emergency powers delegated to him in A.R.S. § 26-303(E) and entered a series of Executive Orders (EOs) regarding among other things the conduct of business in the state to attempt to mitigate the emergency caused by the pandemic. Initially, in March 2020, Governor Ducey entered EOs aimed at encouraging physical distancing to prevent the transmission of COVID-19 by restricting certain business activities and keeping individuals at home except when engaging in essential activities. On May 12, Governor Ducey entered EO 2020-36, which rescinded many of the prior restrictions on business operations. Soon after, the number of COVID-19 cases in the state skyrocketed, increasing from 193 new cases on June 1 to 4,877 new cases on July 1. (Doc. 14-1, Decl. of Cara Christ ("Christ Decl.") ¶ 25.)

On June 29, 2020, Governor Ducey issued EO 2020-43, "Pausing of Arizona's Reopening—Slowing the Spread of COVID-19." EO 2020-43 contained provisions prohibiting unapproved organized events with over 50 individuals and "pausing" the operations of businesses deemed high-risk for the transmission of COVID-19, including bars, indoor gyms and fitness clubs, indoor movie theaters, and water parks and tubing operations. EO 2020-43 stated that swimming pools operating as part of a public accommodation such as a hotel could continue to operate so long as groups of more than 10 individuals were prohibited from congregating in or near the pool. EO 2020-43 allowed "law enforcement and any regulatory agency, pursuant to their regulatory authority, to take immediate enforcement action against any business that fails to follow" the requirements of the EO. Plaintiff Mesa Golfland, Ltd. operates the Sunsplash Water Park in Mesa, Arizona, and was required to pause its operations under EO 2020-43. On July 23, 2020, Governor Ducey issued EO 2020-52, which extended EO 2020-43 with review for repeal or revision every two weeks.

Defendant Dr. Cara Christ was the Director of the Arizona Department of Health Services ("ADHS"). She averred that the decision

to recommend temporary closure of water parks can be supported by the following factors: [1] Water parks primarily involve large groups of younger patrons engaging in physical activity in close proximity. Physical activity results in more exerted breathing, which increases the output of viral respiratory droplets. [2] Engaging in activities that usually occur in a water park setting—swimming, arcade gaming, etc.—may make wearing masks difficult. [3] The wearing of a mask in the water is unlikely. [4] Even if masks are worn, they would quickly become wet, reducing their prevention benefits and making it difficult to breathe. [5] Due to the size of the crowds—a mass of people—six feet of physical distance is not likely to be maintained. [6] There is a tendency to regularly go to different areas of the facility, use multiple areas of physical contact (attractions, railing, concession areas, arcade, mini-golf areas, etc.), enter and exit locker rooms/restrooms, and travel to and from water fountains throughout a visit. [7] Water parks cannot easily be compared to retail, food, or general park environments because of the fundamentally different activities that take place there.

(Christ Decl. ¶ 32.)

On August 10, 2020, Plaintiff filed a Complaint in Arizona state court alleging that, while Plaintiff was required to close Sunsplash under EO 2020-43, certain hotels, resorts, and municipalities continued to operate not just pools but water parks. (Doc. 1-2, Compl.) Governor Ducey timely removed the action to this Court on August 17, 2020. (Doc. 1.) After a hearing, the Court entered an Order (Doc. 36) denying Plaintiff's application for a Temporary Restraining Order ("TRO") and Preliminary and Permanent Injunction (Doc. 13).

Subsequently, Plaintiff filed the FAC, naming as Defendants Governor Ducey and Dr. Christ as well as John Cocca—Director of the Arizona Department of Liquor License and Control—and Eric Matson—Division Manager of the Water and Wastewater Management Division in the Maricopa County Environmental Services Department. Plaintiff contends that drawing a distinction between stand-alone water parks like Sunsplash and water parks at hotels, resorts, and municipal parks is unconstitutionally arbitrary. Plaintiff raises two claims against Defendants: (1) an equal protection violation under Art. 2, § 13 of the Arizona Constitution; and (2) an equal protection violation under

the 14th Amendment to the United States Constitution.[2] Plaintiff continues to seek preliminary and permanent injunctive relief as well as damages and attorneys' fees.

On the same day as Plaintiff filed its original Complaint—August 10, 2020—ADHS issued Emergency Measure ("EM") 2020-02, which set forth the benchmarks and requirements that businesses that were required to close had to meet to safely re-open. On August 19, Plaintiff filed an Application for Reopening with ADHS under EM 2020-02. Moreover, when a county in Arizona hit certain metrics in lowering the numbers of new COVID-19 cases—from, for example, "substantial risk" to "moderate risk" of transmission—ADHS put in place an attestation process by which businesses in that county could begin to reopen by completing and posting an Attestation. Maricopa County, in which Plaintiff is located, moved from the substantial risk to moderate risk level on August 27, allowing certain businesses to reopen under the attestation process, at least in part. On the evening of August 28, after the TRO hearing, Plaintiff completed the ADHS Attestation so that it could reopen. (Doc. 33, Status Update Regarding ADHS Attestation at 1; FAC ¶ 48.) Plaintiff stated at the TRO hearing and alleges in the FAC that it objects to the fact that it was required to complete the Attestation and follow the associated ADHS requirements, for the same reasons it filed this lawsuit and sought injunctive relief. (Doc. 33 at 2; FAC ¶ 49.)

Now, in three separate motions, Defendants have moved to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6).

## II.    LEGAL STANDARD

When analyzing a complaint for failure to state a claim for relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a

---

[2] Plaintiff clarified in its Response briefs that it is not raising a substantive due process claim. (*E.g.*, Doc. 59 at 2.)

motion to dismiss for failure to state a claim. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The complaint must thus contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### III. ANALYSIS

In its Order (Doc. 36) resolving Plaintiff's request for preliminary injunctive relief, the Court found that Plaintiff's facial challenge to EOs 2020-43 and -52 failed; that is, the language of those EOs does not support Plaintiff's position that Governor Ducey intended to distinguish between stand-alone water parks and those at hotels, resorts, and municipal parks, and statements Governor Ducey and Dr. Christ made after EO 2020-43 went into effect did not indicate otherwise.[3] In the FAC, while Plaintiff no longer raises a facial challenge to the EOs, Plaintiff continues to claim that Governor Ducey, as well as newly-named Defendants Dr. Christ, Mr. Cocca, and Mr. Matson, selectively enforced the EOs by not bringing any enforcement action against water parks at hotels, resorts, and municipal parks that continued to operate, thereby violating Plaintiff's equal protection rights.

---

[3] Indeed, the evidence before the Court in resolving the preliminary injunction motion revealed that, when Dr. Christ found out that water parks at hotels continued to operate, she initiated an investigation.

- 5 -

Plaintiff alleges that on June 30, 2020—the day after Governor Ducey issued EO 2020-43—officials representing Governor Ducey informed Plaintiff in a conference call that the water park provision of EO 2020-43 applied to it such that its operations had to be paused. (Compl. ¶ 31.) Plaintiff also alleges that, although water parks at hotels, resorts, and municipal parks continued to operate after June 30, 2020, Defendants never took enforcement action against them. Plaintiff further alleges that Defendants' actions show they knew how to enforce EOs 2020-43 and -52 by seeking injunctive relief against Mountainside Fitness Acquisitions, LLC to enjoin its gyms from operating and by suspending the liquor license of Lifetime Fitness for violating EO 2020-43. Plaintiff does not allege that Defendants took enforcement action against it or any other water park. Rather, Plaintiff alleges that it complied with EOs 2020-43 and -52 when other water parks did not, and Defendants' inaction pertaining to enforcement of the EOs against those water parks gives rise to Plaintiff's constitutional claims.

A selective enforcement or "class-of-one" claim arises if Defendants "(1) intentionally (2) treated [Plaintiff] differently than other similarly situated property owners, (3) without a rational basis." *Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011). To begin with, Plaintiff's allegations going to the second element, unique treatment, are weak at best. In contrast to *Gerhart* and the cases Plaintiff cites in support of its claim, in which government officials took action to enforce rules against the plaintiffs that the officials did not take with respect to parties similarly-situated to the plaintiffs, Plaintiff here alleges that Defendants took no action to enforce EO2020-43 and -52 against any water parks. In this sense, Plaintiff was treated no differently than similarly situated water parks. The most Plaintiff alleges is that communications by Governor Ducey and his agents indicated that Plaintiff had to comply with the EOs. In terms of enforcement of the EOs, however, Plaintiff's allegations do not support the inference that Plaintiff was singled out or treated differently.

And even if Plaintiff's allegations of unique treatment were sufficient, Plaintiff alleges no conduct plausibly raising the inference that Defendants *intentionally* singled out

Plaintiff—the first element of a class-of-one claim. Plaintiff points only to a conclusory allegation in the FAC—"Defendants each either interpreted EO 43 and EO 52 as not applicable to hotel, resort, municipal and State water parks, or they intentionally chose to selectively enforce EO 43 and EO 52 . . ." (FAC ¶ 49)—and to its allegation that Defendants were "aware that hotel, resort, municipal and state water parks remained open but failed to exercise their lawful authority to close them despite knowing that EO 43 was being enforced against Plaintiff" (FAC ¶ 32). The non-conclusory portion of these allegations only plausibly indicates discretionary enforcement on the part of Defendants, not an intentional singling out of Plaintiff. Without more, Plaintiff's class-of-one claim fails.

The Court agrees with Defendants that enforcement of the EOs was, by their very nature, in the type of discretion the Supreme Court referred to in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 603 (2008)—"decisionmaking based on a vast array of subjective, individualized assessments."

> Suppose, for example, that a traffic officer is stationed on a busy highway where people often drive above the speed limit, and there is no basis upon which to distinguish them. If the officer gives only one of those people a ticket, it may be good English to say that the officer has created a class of people that did not get speeding tickets, and a "class of one" that did. But assuming that it is in the nature of the particular government activity that not all speeders can be stopped and ticketed, complaining that one has been singled out for no reason does not invoke the fear of improper government classification. . . . It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized.

*Id.* at 603–604. Plaintiff's class-of-one claim has even less merit where, in the analogy, Plaintiff did not receive a ticket, but instead complains that it went the speed limit but the traffic officer failed to give a ticket to those who were speeding.

For these reasons, Plaintiff fails to state a claim against any of Defendants for violation of its equal protection rights. Although the Court allows a plaintiff leave to amend a complaint if the defects can be cured, *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000), the Court finds that Plaintiff here cannot plausibly cure the defects in its claims by amendment.

The Court also notes that Plaintiff's claims have other fatal defects, as Defendants raise in their Motions. With respect to Governor Ducey, as the Court found in its Order resolving Plaintiff's request for preliminary injunctive relief, EO 2020-43 was quasi-legislative under A.R.S. § 26-303(E) and explicitly provides, in paragraph 7, that it will be enforced pursuant to the regulatory authority of individual agencies and law enforcement, and not directly by Governor Ducey. As a result, Governor Ducey shares the state's Eleventh Amendment immunity and the *Ex Parte Young* exception does not apply. *See, e.g.*, *Confed. Tribes & Bands of the Yakama Indian Nation v. Locke*, 176 F.3d 467, 469–70 (9th Cir. 1999) (concluding the plaintiff could not bring claim against the governor to challenge actions of the state lottery where the governor was not directly charged with operating the lottery).

With respect to Mr. Cocca, who is the Director of the Arizona Department of Liquor License and Control, Plaintiff cannot raise a claim against him for not depriving other entities of a liquor license when Plaintiff did not have a liquor license to begin with. Again, Plaintiff alleges nothing in the way of unique treatment through Mr. Cocca's enforcement of EOs 2020-43 and -52 against it. (*See* Doc. 55 at 10.)

With respect to Mr. Matson, who is a Division Manager of the Water and Wastewater Management Division in the Maricopa County Environmental Services Department, Plaintiff similarly alleges nothing in the way of enforcement action Mr. Matson took against Plaintiff or any water park. (*See* Doc. 56 at 6.) At best, Plaintiff groups Mr. Matson with the other Defendants. As stated above, Plaintiff's allegations of unique treatment against Governor Ducey and Dr. Christ are insufficient; the allegations against Mr. Matson are non-existent.

For all the foregoing reasons, the Court must dismiss Plaintiff's claims.

**IT IS THEREFORE ORDERED** granting Defendant Governor Douglas A. Ducey's Motion to Dismiss (Doc. 53).

**IT IS FURTHER ORDERED** granting Defendants Dr. Cara Christ and John Cocca's Motion to Dismiss (Doc. 55).

**IT IS FURTHER ORDERED** granting Defendant Eric Matson's Motion to Dismiss (Doc. 56).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment dismissing Plaintiff's claims and close this case.

Dated this 13th day of September, 2021.

Honorable John J. Tuchi
United States District Judge